**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

| | |
|---|---|
| DAVID CONRATH, on Behalf of Himself and All Others Similarly-situated, | ) ) ) |
| *Plaintiff,* | ) PUTATIVE CLASS ACTION ) ) CASE NO. <u>4:19-CV-47-JHM</u> |
| v. | ) ) |
| THE WEBSTAURANT STORE, INC. | ) JURY DEMANDED ) |
| *Defendant.* | ) ) ) |

**COMPLAINT**

    1.    Comes Plaintiff David Conrath, by and through counsel, and brings this action on behalf of himself pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and on behalf of himself and others similarly-situated as a proposed or putative class action under Pennsylvania law prohibiting the nonpayment of wages, including 43 P.S. § 260.9A, against Defendant The WEBstaurant Store, Inc. (which is engaged in the business of selling commercial kitchen supplies and equipment through the website www.webstaurantstore.com, and which employs customer support representatives at several locations around the country, including one in Madisonville, Kentucky), for violations by Defendant of its statutory obligations to pay its employees for all work performed.  Specifically, The WEBstaurant Store, Inc. has willfully engaged in the practice of not recording employees' time for all work performed, permitting or requiring employees to perform work in addition to scheduled shifts, and not compensating employees with appropriate payment for such work, in violation of the FLSA and Pennsylvania law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

3. The Court has supplemental jurisdiction under 28 U.S.C § 1367 over Plaintiff's claims on behalf of himself and a proposed class of similarly-situated persons under Pennsylvania law, including 43 P.S. § 260.9A.

4. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b), because The WEBstaurant Store, Inc. operates a customer support facility located in the Western District of Kentucky, in Madisonville, Hopkins County, Kentucky (the "Madisonville facility") and thus Defendant conducts business and can be found in the Western District of Kentucky. Further, this Court previously heard *Rogers v. The WEBstaurant Store, Inc.*, No. 4:18-cv-00074, a case in which similar claims were asserted under the FLSA, and in which the particular circumstances of Defendant's recordkeeping practices relating to time worked by employees were to some extent litigated, which further supports this Court exercising jurisdiction in this venue.

## PARTIES

5. Plaintiff David Conrath is a resident of Pennsylvania. Plaintiff worked for Defendant with the title Customer Solutions Specialist at Defendant's customer support facility in Lititz, Pennsylvania from approximately July, 2014 until July, 2017.

6. Thereafter, Plaintiff again became employed by Defendant in 2018, and is currently employed by Defendant at the time of filing this action.

7. Plaintiff was at all times a non-exempt employee of Defendant within the meaning of the FLSA.

8. Plaintiff brings this action under the FLSA on behalf of himself and under 43 P.S. § 260.9A on behalf of himself and a proposed class of all similarly-situated current and former

employees of Defendant who (A) were employed by Defendant as a Customer Solutions Specialist, (B) worked hours before and/or after his or her shift in one or more workweeks for which wages were due to be paid within three years of the filing of this action, and (C) have not been fully compensated by Defendant for all hours worked in such workweek or workweeks.

9. Defendant Defendant (hereafter, "Defendant" or "Defendant") is a Pennsylvania for-profit corporation engaged in the business of selling commercial restaurant supplies and equipment (such as that utilized in kitchens of restaurants).

10. Defendant may be served with process by service on Morgan Stone, who is Defendant's registered agent listed with the Commonwealth of Kentucky Secretary of State, at 410 Commerce Drive, Madisonville, KY 42431, which is Defendant's registered agent address listed with the Commonwealth of Kentucky Secretary of State.

11. Defendant maintains customer support facilities and otherwise employs employees similarly-situated to Plaintiff in both Madisonville, Kentucky and Pennsylvania (the Lancaster, Pennsylvania area, including Lititz, Pennsylvania).

12. The facility in Madisonville, Kentucky is in Hopkins County, within the District of the United States District Court for the Western District of Kentucky.

13. Defendant's annual sales have, at all times relevant to this Complaint, exceeded $500,000.00.

14. At all times relevant to this Complaint, Defendant has regularly engaged in interstate commerce and was an employer within the meaning of the FLSA, 29 U.S.C. §§ 206-207.

## **GENERAL ALLEGATIONS**

15. Plaintiff was employed as an employee at the Lititz, Pennsylvania customer support facility operated by Defendant.

16. Prior to March 24, 2018, Defendant maintained a timeclock system for other employees.

17. The purpose of the timeclock system maintained by Defendant prior to March 24, 2018 was (and, indeed, the purpose of such timeclock systems in general is) to enable the employer to accurately record each employee's actual hours worked so that the employer may pay the employee in accordance with such actual hours worked, including overtime pay, if earned in a particular work week.

18. However, although such a timeclock system for customer support employees and similar non-exempt employees would have been simple and easy for Defendant to install and utilize, prior to March 24, 2018 Defendant chose not to maintain or utilize such a timeclock system whereby such employees clock in upon arriving at Defendant's facility and beginning work, and clock out upon ending work.

19. Instead, Defendant told its customer support employees and similarly-situated non-exempt employees that they would be paid on a "salary" basis, scheduled them to work particular shifts, and paid the employees the same amount every pay period, as if the employee had worked exactly the number of hours scheduled, despite the fact that it was aware that Plaintiff and employees similarly-situated to Plaintiff were regularly being made to work, and regularly working, during times other than (and in addition to) the scheduled shifts.

20. Many of the shifts consisted of employees scheduled to work five eight-hour (not including unpaid lunch) shifts per week, and Plaintiff worked such a shift for a period of his employment with Defendant.

21. Other employees were scheduled to work four nine-and-one-half-hour (not including unpaid lunch) shifts per week, and Plaintiff worked this shift for most of his employment with Defendant.

22. Upon information and belief, during the period that Plaintiff was scheduled to work four nine-and-one-half-hour shifts per week, Plaintiff worked more than forty hours in many work weeks (by working the thirty-eight scheduled hours and more than two hours of additional, uncompensated work in the workweek before or after the scheduled shift, and/or during the unpaid lunch break).

23. Defendant did not pay Plaintiff for his overtime work despite the fact that Defendant was aware that overtime must be paid to non-exempt employees regardless of whether or not the employer characterizes such employees as "salary" employees, and despite the fact that Defendant was aware that Plaintiff and similarly-situated employees were performing work in excess of their scheduled shifts, and in excess of forty hours per workweek.

24. In order to coordinate their customer support activities, Defendant has each customer support representative "log in" on her workstation shortly after arriving at work.

25. This allows Defendant to know which representatives are available in order to route incoming customer inquiries to available customer support representatives.

26. Defendant schedules its customer support representatives for particular shifts of eight hours per day (not including unpaid lunches, where allowed), and carefully monitored employees to ensure that customer supports representatives were at work on time to begin work by the beginning of the assigned shift.

27. Defendant instructs its customer support representatives to log out of Defendant's customer support system at the end of their work engaging with customers.

28. However, because it would be unreasonable from the customer's standpoint if the customer support representative simply ended the communication with the customer at the scheduled end of the customer support representative's shift without responding to the customer's inquiry, it was common that customer support representatives would work beyond the scheduled end of the representative's shift.

29. When this would occur, the representative would not "log out" of Defendant's customer support system until after the end of the representative's scheduled shift, and Defendant's customer support system would automatically record the number of hours that the representative was "logged in" to the system, showing both a "log in" time and a "log out" time for each session.

30. Indeed, Defendant's customer support system would automatically record the number of hours that each representative was "logged in" every day that the representative worked.

31. Accordingly, upon information and belief, by using their own internal customer support system and similar computer systems and viewing the number of hours that each representative was "logged in," Defendant was able tell when employees had worked more than forty hours in a week and pay overtime, if and when it chose to do so.

32. Indeed, upon information and belief, occasionally, management would email a report showing a particular employee's hours worked to the employee, with a request that the employee reduce her remaining shifts in the workweek; for example, management would send an email to an employee on Wednesday with a report showing the hours the representative was "logged in" on Tuesday, with the text of the email saying something to the effect of "it looks like worked 45 minutes over yesterday, please come in 45 minutes late tomorrow."

33. However, this "system" of attempting to adjust representatives' shifts to keep their total hours worked somewhat close to forty per week was utilized inconsistently and non-

systematically, and, as a result, representatives regularly worked (as was shown, upon information and belief, by the time data of "logged in" time shown on Defendant's customer support and similar computer systems) more than forty hours per week.

34. However, until at least April, 2018, Defendant never paid overtime, despite knowing that its non-exempt employees paid on a salary basis regularly worked more than forty hours per week.

35. Upon information and belief, Defendant knew since at least October, 2015 that it was systematically failing to pay overtime.

36. Specifically, upon information and belief, one of Defendant's Customer Solutions Team Leaders, Jasmine LaGore, sent the following email to a Customer Solutions Specialist on October 2, 2015:

> I think part of the challenge we face now is breaking the habit of staying late (which has been engrained for 3 years!). Your willingness to stay late and help the team and push for numbers have all been strong indicators of your work ethic and commitment to the team and are appreciated. We just have to get to a win-win for you (having more of a work/life balance, getting paid for the time worked) and for the company (making sure we don't have people working overtime since we don't pay overtime hours and making sure everyone is able to complete their work efficiently).

37. Upon information and belief, the email exchange between LaGore and the Customer Solutions Specialists are attached to the Declaration of Abbigail Jones, which is itself attached hereto as Exhibit 1.

38. Upon information and belief, by analyzing Defendant's own records, it will be possible to calculate for Plaintiff and each similarly-situated employee an exact number of hours each employee was "logged in" to Defendant's customer support system and working, and thereby calculate with precision a portion of the unpaid wages Defendant failed to pay to its customer support representatives, in violation of the FLSA and Pennsylvania law.

39. Defendant could easily have used a "timeclock" system whereby Plaintiff and similarly-situated employees "clocked in" upon arriving at work, which system (A) Defendant used in the same facility for warehouse employees and (B) would have captured the actual time Plaintiff and similarly-situated employees spent performing work but not "logged in" to Defendant's customer support or other computer system.

40. Defendant knew that (A) it was required to pay Plaintiff and similarly-situated employees overtime pay for hours worked in excess of forty per week, (B) that Plaintiff and similarly-situated employees were regularly working more than forty hours per week and (C) that a "timeclock" system such as that Defendant used for others of its employees would enable Defendant to accurately record the actual time worked by Plaintiff and similarly-situated employees so that Defendant could appropriately pay overtime pay.

41. However, despite this knowledge, Defendant intentionally chose not to use a "timeclock" system and to emphasize to Plaintiff and similarly-situated employees that they were "salary" employees in order to exploit misconceptions of Plaintiff and similarly-situated employees regarding whether they were entitled to overtime pay and other pay for work perfomed in addition to scheduled shifts, and to illegally pay avoid paying overtime pay and wages owed under state law.

42. Although Defendant knew that Plaintiff and similarly-situated employees were entitled to overtime pay, Defendant never paid Plaintiff and similarly-situated employees overtime pay until at least April, 2018.

43. The administrative exemption available under the FLSA did not apply to the work of Plaintiff and similarly-situated employees paid on a salary basis (including customer support

employees) because, among other things, their primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

44. Indeed, to the contrary, the work of Plaintiff and similarly-situated employees paid on a salary basis (including customer support employees) was regimented and controlled by management policies, and consisted primarily of repeatedly instructing customers in how to utilize Defendant's website or similar tasks which did not involve the exercise of discretion or independent judgment.

45. Further, upon information and belief, Defendant itself categorized Plaintiff and similarly-situated employees paid on a salary basis (including customer support employees) as non-exempt under the FLSA in its own documents, although it was careful not to publicize this fact to Plaintiff and the similarly-situated employees paid on a salary basis (including customer support employees) whose FLSA rights it was violating.

46. Specifically, upon information and belief, Defendant's lawyer represented on March 18, 2018 to the lawyer representing April Duncan, another Customer Solutions Specialist asserting that she was not paid overtime pay, that "Ms. Duncan was a salaried non-exempt employee. Ms. Duncan had a set schedule that she worked. That schedule was 40 hours in a workweek. Employees were instructed that they were to document any hours in a day that exceeded 8 hours so that they could, in that week, work less so that they did not exceed 40 hours in a week. Employees who worked more than 40 hours were to be compensated with overtime."

47. Upon information and belief, a copy of this email is attached hereto as Exhibit 2.

48. This unlawful conduct by Defendant has been widespread, repeated and consistent with respect to Plaintiff and similarly-situated Customer Solutions Specialist employees.

49. Defendant has willfully engaged in a pattern and practice of unlawful conduct by declining to record and pay for all of the time it requires or permits its employees, including Plaintiff, to work, in violation of the FLSA.

50. Defendant knew or should have known that its supervisory and management personnel permit or require Plaintiff and other members of the proposed class to perform work which is for the benefit of Defendant, and which is integral to Defendant's business, without appropriate compensation, including time in connection with the unlawful practices described above.

51. The conduct of Defendant, set forth above, has been willful, in bad faith, and has caused significant damages to Plaintiff and other members of the proposed class.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action on behalf of himself and the following proposed class of similarly-situated employees:

> all current and former employees of The WEBstaurant Store, Inc. who worked as a Customer Solutions Specialists while employed by Defendant in the Commwealth of Pennsylvania at any time from the date three years prior to the filing of this action (i.e., at any time from May 7, 2016 through May 7, 2019), who performed work before and/or after any scheduled shift and who have not been fully compensated for such overtime hours worked.

53. The members of the proposed class have been subject to the unlawful practices alleged herein, and therefore, are similarly-situated to the named plaintiff in this putative class action.

54. The employment policies, practices and agreements of Defendant raise questions of fact common to the class including:

   a. whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiff and members of the proposed class to perform work outside of employees'

        scheduled shifts, knowing that the employee would not be paid for such work, all for the benefit of Defendant and without appropriate compensation;

    b. whether the conduct of Defendant was willful;

55. whether Plaintiff and members of the proposed class are entitled to lost wages, liquidated damages and the other relief requested.

56. The claims of the named Plaintiff are similar to those of the proposed class members, in that Plaintiff has been subject to the same conduct as members of the proposed or putative class action and Plaintiff's claims are based on the same legal theory as members of the proposed or putative class action.

57. This Court previously approved a collective action under the FLSA in *Rogers v. The Webstaurant Store, Inc.*, No. 18-cv-00074, and accordingly, is, having become experienced in issues relating to Defendant's practices regarding the nonpayment of wages for time worked by employees, the appropriate court to hear the proposed class action.

58. Pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), Plaintiff's consent to join this action is attached hereto as Exhibit 3.

### COUNT I – VIOLATION OF FLSA – NONPAYMENT OF OVERTIME – ON BEHALF OF PLAINTIFF, INDIVIDUALLY

59. Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

60. Defendant has willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

    a. failing to keep accurate records showing all the time it permitted Plaintiff to work, from the first compensable act to the last compensable act, which has resulted in

          the denial of compensation at an overtime rate as required by the FLSA, for all time worked in excess of forty hours in a work week; and

    b.    permitting and/or requiring Plaintiff to perform integral and indispensable activities (work) before and after the regular paid work time, and in addition to working forty hours in a work week, for the benefit of Defendant and without compensation at the applicable federal overtime rates.

61.    As a result of Defendant's violations of the FLSA, Plaintiff suffered damages, including lost overtime pay, for which Plaintiff should be awarded compensatory damages, liquidated damages, and attorney's fees and other reasonable litigation expenses.

### COUNT II – VIOLATION OF 43 P.S. § 260.9A – ON BEHALF OF PLAINTIFF INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS OF SIMILARLY-SITUATED EMPLOYEES

62. Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

63. Defendant's practice of permitting employees to work before and/or after scheduled shifts, but then not paying the employees for that work, violated Pennsylvania law, including 43 P.S. § 260.9A.

64. Defendant's violations were willful.

65. As a result of Defendant's violations of 43 P.S. § 260.9A, Plaintiff and the members of the proposed class suffered damages, including lost wages, for which Plaintiff and the members of the proposed class should be awarded compensatory damages, liquidated damages, attorney's fees and other reasonable litigation expenses.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court:

A. Issue process and bring Defendant before the Court;

B. Grant Plaintiff damages under the FLSA for Plaintiff's unpaid overtime work, plus liquidated damages in an equal like amount;

C. Certify a class of similarly-situated persons, and grant both Plaintiff and the other members of the class relief relating to Defendant's violations of Pennsylvania law by nonpayment of wages;

D. Empanel a jury for the trial of all issues of fact;

  E. Enter a judgment awarding Plaintiff and similarly-situated persons damages from Defendant, including compensation for unrecorded work time, interest, and liquidated or exemplary damages, in amounts to be proven at trial;

  F. Award Plaintiff and similarly-situated persons all costs of litigation, including expert fees and attorneys' fees;

  G. Grant Plaintiff such other further and/or general relief, legal and/or equitable relief, to which Plaintiff is entitled or which the Court otherwise proper.

          Respectfully submitted,

          /s/ Mark N. Foster
          Mark N. Foster
          Law Office of Mark N. Foster, PLLC
          P.O. Box 869
          Madisonville, KY 42431
          (270) 213-1303
          MFoster@MarkNFoster.com
          *Counsel for Plaintiff David Conrath*